UNITED STATES BANKRPUTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In Re:                                                                                    Case No.: 17-72138-reg

                                                                  Chp. 11
WHITE FRAME LLC
                                                    **Hearing Date: July 24, 2017**
                           Debtor                                                **Time: 1:30 P.M.**
-------------------------------------------------------------------X

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Kafi Harris, Esq. principal member of the law firm KAFI HARRIS & ASSOCIATES, P.C. WHITE FRAME LLC, Debtor will move this Court as set forth below:

| | |
|---|---|
| JUDGE: | Hon. Robert E. Grossman |
| RETURN DATE &TIME: | July 24, 2017 at 01:30 P.M. |
| COURTHOUSE: | Alfonse M. D'Amato United States Bankruptcy Court<br>290 Federal Plaza<br>Central Islip, NY 11722 |
| RELIEF REQUESTED: | The proposed order will seek for the Court's consent for Debtor to sell the property located at 75 South Street, Oyster Bay, NY 11771 through a private sale. |

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be filed with the Court and served on the undersigned counsel and on the Office of the Untied States Trustee at United States Bankruptcy Court, 290 Federal Plaza, Room 560, Central Islip, NY 11722, so as to be received no later than seven days before the return date.

Dated: Hempstead, New York
       July 3, 2017

                                                         KAFI HARRIS & ASSOCIATES, P.C.
                                                         Attorneys for Debtor

                                By    /s/ Kafi Harris
                                            Kafi Harris, Esq.
                                            41 Hilton Avenue
                                            Hempstead, New York 11550
                                            (516) 248-8131

**UNITED STATES BANKRPUTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

In Re:                                                                                          Case No.: 17-72138-reg

      WHITE FRAME LLC
                                                                                                           Chp. 11
                     Debtor

----------------------------------------------------------------X

TO:   THE HONORABLE ROBERT E. GROSSMAN
         UNITED STATES BANKRUPTCY JUDGE

      I, KAFI HARRIS, ESQ., declare as follows:

      1.    I am a member of KAFI HARRIS & ASSOCIATES, P.C., attorney for WHITE FRAME LLC ("Debtors"). I make this Declaration in support of an Order allowing for the private sale of the property located at 75 South Street, Oyster Bay, NY 11771 ("subject premises") to satisfy Debtor's mortgage.

      2.    Currently Debtor has only one creditor, to wit: 75 South Street Funding Associates ("75 South"). 75 South holds a final judgment of foreclosure and sale on the subject premises. Furthermore, 75 South is the sole mortgagee of the property located at 75 South Street, Oyster Bay, NY 11771 and has filed its proof of claim with this Court in the amount of $516,160.30.

      3.    On April 20, 2017, 75 South filed a motion for relief of stay for the subject premises. On May 18, 2017 said motion was held before the Honorable Robert E. Grossman and was granted as stated on the record. A copy of the Order is annexed hereto as Exhibit "A."

      4.    In or about April of 2017, Debtor and a potential buyer entered into negotiations for the sale of the subject premises. Both parties agreed to an amount of

$525,000.00 as a sales price. Included in the sales amount was real estate commission fee of six (6%) percent by Cushman and Wakefield, the real estate broker on the transaction.

5. The main purpose of selling the subject premises was to satisfy Debtor's mortgage currently held with 75 South.

6. With a proof of claim of $516,160.00 and real estate commission equating to $31,500.00 there was no question that all parties to the within transaction would not be made whole.

7. After several discussions, 75 South and Cushman and Wakefield, came to agreement wherein Cushman and Wakefield would lower its commission to 3% and 75 South would agree to a net of figure that would be lower than its proof of claim.

8. On May 8, 2017, the Debtor executed a Contract of Sale for $525,000.00 with a purchaser who is ready willing and able to purchase the subject premises. The purchaser has already provided your affirmant and 75 South's counsel, Ravert PLLC., with proof of funds and a pre approval for a mortgage to cover the remainder of the sales price. A copy of the Contract of Sale is annexed hereto as Exhibit "B."

9. Debtor is confident that the potential closing will occur and considering that 75 South is the only creditor has filed a proof of claim, said sale would satisfy same.

10. In addition, in the event that a closing cannot be conducted 75 South is still adequately protected given that there is already an Order granted giving it relief from stay.

11. Based on the foregoing reasons, Debtor respectfully requests that this Court grant an Order allowing for the private sale of the only real property owned by the Debtor, to wit: 75 South Street, Oyster Bay, NY 11771.

12. No prior application has been made to this or any other Court for the relief requested.

WHEREFORE, based on the foregoing, it is respectfully requested that the Court grant an Order allowing Debtor to sell the real property located at 75 South Street, Oyster Bay, NY 11771 through a private sale; together with such other and further relief as this Court deems just and proper.

Dated: Hempstead, New York
      July 3, 2017

                                  KAFI HARRIS & ASSOCIATES, P.C.
                                  Attorneys for Debtor

                    By    /s/ Kafi Harris
                          Kafi Harris, Esq.
                          41 Hilton Avenue
                          Hempstead, New York 11550
                          (516) 248-8131

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) ) ) Chapter 11 |
| WHITE FRAME LLC, | ) ) Case No. 17-72138 (REG) |
| *Debtor.* | ) ) ) ) ) |

### ORDER PURSUANT TO SECTION 362(d)(1), (2) AND (4) OF THE BANKRUPTCY CODE GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon the motion dated April 20, 2017 (the "Motion")[1] [Docket No. 13] filed by 75 South Street Funding Associates ("Funding"), pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for relief from the automatic stay pursuant to sections 362(d)(1), (2) and (4) for relief from the automatic stay to continue to pursue its state law rights against the above-captioned debtor (the "Debtor") and that certain property located at 75 South Street, Oyster Bay, NY 11771 [Section 27, Block 2, Lot 25] (the "Oyster Bay Property"); and upon the Declaration of Frank Chiarello in Support of the Motion, dated April 20, 2017; and upon all other matters before this Court concerning the related chapter 13 case, Case No. 16-74814 (REG)l and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Motion.

reviewed the Motion, any papers filed in response thereto; and after a hearing before this Court on May 15, 2017 (the "Hearing"), the Court having determined that the legal and factual bases, including those set forth in the Motion and at the Hearings, establish cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, and for the reasons stated on the record at the Hearing, it is hereby Ordered that:

1. The Motion is granted to the extent set forth herein.

2. The automatic stay is hereby lifted and Funding is hereby authorized to pursue its rights under applicable law with respect to the Oyster Bay Property, except that any foreclosure sale may not take place prior to July 15, 2017.

3. Under 11 U.S.C. § 362(d)(4), this Order lifting the automatic stay under 11 U.S.C. § 362(a) as to Funding's interest in the Oyster Bay Property shall be binding in any other case filed under the Bankruptcy Code purporting to affect the Oyster Bay Property that is filed not later than 2 years after the date of this Order, such that the automatic stay under 11 U.S.C. § 362(a) shall not apply to Funding's interest in the Oyster Bay Property in such case.

4. In the event the enforcement of Funding's rights results in cash in excess of all amounts due to it under its judgment, Funding shall remit such excess cash to the Debtor and notify the Office of the United States Trustee.



Dated: Central Islip, New York
May 23, 2017

Robert E. Grossman
United States Bankruptcy Judge

# EXHIBIT "B"

(b) By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02:  $498,750.00
(c) By acceptance of title subject to the following Existing Mortgage(s):  ~~$105,000.00~~
(d) By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase Money Mortgage on the Premises, in the sum of $  payable as follows:

Interest Rate:   Term:   Monthly payment:   Prep. Fee:   Other provisions:   $
Making for a total Purchase Price of:  ~~$420,000.00~~ $525,000.00

Schedule D
MISCELLANEOUS

1. Title insurer designated by the parties (§1.02): Freedom First Abstract, Inc.

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)): N/A

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)): N/A

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)): N/A

5. Seller's tax ID Nos (§2.05) #1:   #2:   #3:   #4:

6. Buyer's tax ID Nos (§2.05) #1:   #2:   #3:   #4:

7. Scheduled time and date of Closing (§3.01): Date: ~~June 15, 2017~~ On or about July 15, 2017 Time: 9:30 o'clock.

8. Place of Closing (§3.01): Office of the Seller or the Purchaser's Lender

9. Assessed valuation of Premises (§4.10): ~~525,000.00~~ N/A

10. ~~Fiscal~~ Lien year and annual real estate taxes on Premises (§4.10): Fiscal Year: 2017   Annual Taxes: 17,000.00 approx

11. Tax abatements or exemptions affecting Premises (§4.10):

12. Assessments on Premises (§4.13):

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02): 2,500.00

14. Maximum Expense of Seller to cure title defects, etc. (§13.02): 2,500.00

15. Broker, if any (§14.01): Cushman & Wakefield

16. Party to pay broker's commission (§14.01): Seller

17. Address for notices (§15.01):
   If to Seller:
   Kafi Harris & Associates PC
   41 Hilton Avenue
   Hempstead, NY 11550

   with a copy to:

   If to Purchaser:
   Neal T. Iorio, Esq.
   39 Landing Avenue
   Smithtown, NY 11787-2710

   with a copy to:

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01): ~~January 14, 2010~~ Date of Closing, except as otherwise stated in Rider attached hereto.

19. Additional Schedules or Riders (§17.08): See Attached

Schedule E
RENT SCHEDULE

(☐ if more than four tenants, check, and annex a rent schedule rider hereto; otherwise, enter information below)

| Name | Apt. No. | Rent Due | Security |
|---|---|---|---|
| Douglas Kröber DDS | First Floor | by lease to be provided by Purchaser | |
| Francisco Yee | Second Floor ~~A~~ rear | $1,800.00 | $1,800.00 |
| ~~Felix Gutierrez~~ | ~~B~~ | ~~$1,800.00~~ | ~~$1,800.00~~ |

Section 1. Sale of Premises and Acceptable Title

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvement situated on the Land (collectively, "Building");

(c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as
Street Address: 75 South Street
City: Oyster Bay State: NY Zip: 11771
Tax Map Designation: Section:027 Block:002 Lot:025

§1.02. Seller shall convey and Purchaser shall accept *marketable* fee simple title to the Premises in accordance with the terms of this contract, subject only to:

(a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and

(b) such other matters as (i) the title insurer specified in Schedule D attached hereto (~~or if none is so specified, then any member of the New York Board of Title Underwriters~~) shall be willing, without special premium, to omit as exceptions to coverage ~~or to except with insurance against collection out of or enforcement against the Premises~~ and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Down payment

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $525,000.00

§2.02. *The balance of* All monies payable under this contract *at closing* unless otherwise specified in this contract, shall be paid by:

(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or

(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

§2.03. ~~(a) If Schedule C provides for the acceptance~~ of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate. If at the Closing the aggregate principal amount of the Existing Mortgage(s), as reduced by payments required there under prior to the Closing, is less than the aggregate amount of the Existing Mortgage(s) as specified in Schedule C, the difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.

(b) ~~If any of the documents constituting the Existing~~ Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contact, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent

(i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or

(ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.

If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing ~~Mortgage(s).~~

§2.04. ~~(a) If Schedule C provides for payment of a~~ portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the standard forms of the New York Board of Title Underwriters then in effect for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefore and the filing fees for any financing statements delivered in connection therewith.

(b) If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii) if the principal amount of the Refinanced Mortgage plus principal amount of other Existing Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due there under in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements reasonably required by the mortgagee to confirm ~~such subordination.~~

~~(c) The Purchase Money Mortgage shall contain the~~ following additional provisions:

(i) "The mortgagor or any owner of the mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accrued interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagee in which the Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date], on not less than 10 days' written notice to the holder hereof."

(ii) "Notwithstanding anything to the contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or undisclosed, be personally liable for any breach of or default under the note or this mortgage or for any deficiency resulting from or through any proceedings to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this mortgage or the mortgagee's right of foreclosure."

(iii) "In addition to performing its obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a agrees that, within 10 days after written request by the mortgagor, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposits then held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged defaults hereunder and, if so, specifying the nature thereof."

(iv) "All notices required or desired to be given under this mortgage shall be in writing and shall be delivered/personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated in a notice given to the other party or parties in accordance with the provisions hereof."

(v) The additional provisions, if any, ~~specified~~ in a rider hereto.

§2.05. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly ~~and severally~~ indemnify and hold Escrowee harmless from and against all costs, claims and expenses, ~~including reasonable attorneys' fees,~~ incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving ~~gross~~ negligence on the part of Escrowee.

(c) Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

Section 3. The Closing

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser as follows:

§4.01. Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02. ~~If the Premises are encumbered by an Existing~~ Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended ~~except as shown in such documents.~~

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;
(b) no renewal or extension options have been granted to tenants;
(c) no tenant has an option to purchase the Premises;
(d) the rents set forth are being collected on a current basis and there are on arrearages in excess of one month;
(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;



(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owed to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by

Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

Section 5. Acknowledgments of Purchaser
Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. ~~Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all~~ other matters affecting or ~~relating to this transaction as Purchaser deemed necessary~~. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:
(a) amend, renew or extend any Lease in any respect, unless required by law;
(b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or
(c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with
(a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and
(b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified

in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease of Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchaser Price or give rise to any other claim on the part of Purchaser.

Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of ~~this contract~~ by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. ~~If such removal~~ or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser ~~shall~~ be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as ~~provided in §13.02~~ if ✱ closing
(a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or
(b) the Building is a multiple dwelling and either
(i) such violation is rent impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or
(ii) a proceeding has been validly commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. ~~Regardless of whether a violation has been~~ noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with the following violations shall not be an objection to title:
(a) any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or
(b) any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

Section 9. Covenants of Seller

Seller covenants that between the date of this contract and the Closing:

~~§9.01. The Existing Mortgage(s) shall not be~~ amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to be paid or made under the Existing Mortgage(s).

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

Section 10. Seller's Closing Obligations
At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. ~~All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.~~

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing ~~which are then in effect and are assignable by Seller~~.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and (b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).
Seller shall pay the fees for recording such certificate(s). Any Mortgagee which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. ~~An assignment of all Seller's right, title and~~ interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. ~~All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.~~

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasigovernmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12. Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof.

§10.13. To the extent they are then in Seller's possession, copies of current painting ~~and payroll records~~ *re cord the closing*; Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. ~~Notice(s) to the Mortgagee(s), executed by~~ Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

Section 11. Purchaser's Closing Obligations
At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, ~~plus the amount of escrow deposits, if any, assigned pursuant to §10.08.~~

§11.02. ~~Deliver to Seller the Purchase Money~~ Mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for ~~any Purchase Money Mortgage~~.

§11.03. ~~Deliver to Seller an agreement indemnifying~~ and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent ~~paid, credited or assigned to Purchaser under §10.03.~~

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:
(a) prepaid rents and Additional Rents (as defined in §12.03);
(b) ~~interest on the Existing Mortgage(s)~~;
(c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;    * lien
(d) ~~wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to~~ *re cord the Closing*;
(e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;
(f) ~~charges under transferable Service Contracts or permitted renewals or replacements thereof~~;
(g) ~~permitted administrative charges, if any, on tenants' security deposits~~;
(h) ~~dues to rent stabilization associations, if any~~;



(i) ~~insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;~~
(j) ~~Reletting Expenses under §6.02, if any; and~~
(k) ~~any other items listed in Schedule D.~~

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority:
(a) first to the month preceding the month in which the Closing occurred;
(b) then to the month in which the Closing occurred;
(c) then to any month or months following the month in which the Closing occurred; and
(d) then to the period prior to the month preceding the month in which the Closing occurred.
If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect\* to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Down payment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, ~~to the extent of the monies payable at the Closing,~~ mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03 Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. ~~If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.~~

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after¦ default by Purchaser under this contract.     ⟨willful⟩

Section 14. Broker

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this

\* by written notice

paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

Section 15. Notices

§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.

Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action base thereon shall be commenced after the Closing. The representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Scheduled D (or if none is so specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

§16.02 The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

Section 17. Miscellaneous Provisions

§17.01. ~~If consent of the Existing Mortgagee(s) is required under §2.03(b)~~, Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.

ꭶꮧꮎꮔꮣꮃꮝ ꮺꮒꭰꮢꭼꮎꮝ, the Parties hereto have duly executed this Contract as of the date first above written.

| SELLER(S): | BUYER(S): |
|---|---|
| _____ | X_____ |
| White Frame LLC | Perriconé Familiy Living Trust *dated 10-6-2014 by Michele Perricone as trustee* |
| _____ | _____ |
| Douglas Krober | |
| _____ | _____ |
| Kristene Krober | |

Receipt by Escrowee:
The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05.

_____
Kafi Harris, Esq.